In this suit, Laurent J. Dauterive, dealing in the firm name of Dauterive Furniture Company, seeks to recover of the defendant the sum of $200 as the unpaid portion of the purchase price of a davenport and chair; the original purchase price of the said furniture was $218.16, of which $18.16 was paid by the defendant. The defendant resists the demand of plaintiff for the reason that the furniture so sold was defective and that the said defects were such as to render it absolutely worthless for the purposes for which it had been bought; and as a consequence thereof, he seeks to avail himself of the principle of our law applicable to redhibitory vices, thus rescinding the sale of the same; and that he recover in reconvention the sum of $18.16, the amount paid by him.
Upon these issues, the case was tried and judgment was rendered in favor of the plaintiff. Defendant prosecutes this appeal.
The evidence shows that defendant had constructed a new home and was desirous of obtaining new furniture for the same; that he and his wife called at plaintiff's store for the purpose of buying such furniture as they might find convenient for their use. They were waited upon by Mr. Leonard Broussard, a clerk of plaintiff. After purchasing such furniture as they found on hand, they desired a davenport and chair for their living room. Not finding in stock such furniture, Mr. Broussard exhibited to them catalogues of furniture, photographs of the same, and samples. With the help of Mr. Broussard and upon their reliance on his representations, defendant placed an order for the set in question, it being upholstered in leatherette, an imitation of leather. The set was delivered to the defendant the latter part of July, 1938, upholstered with leatherette seemingly of the same grade and color requested and in good condition. After some sixty days of the use of the furniture, the set showed signs of defect by the cracking of the upholstering and the appearance of spots. Mrs. Barry complained to plaintiff of the defects and some thirty days thereafter Mr. Broussard visited defendant's home and admitted that the defects existed and that the furniture was *Page 155 
defective and stated that the furniture would be taken up and sent back to the factory for reconditioning; that due to the oncoming holiday season, and the lack of space in the store and the remodelling or extension of plaintiff's warehouse it would be best that the furniture remain in defendant's home until such time as plaintiff might call for the same. On January 17, 1939, plaintiff did call for and removed the furniture from defendant's home to his establishment, wherein it was thoroughly cleaned and washed. Thereafter plaintiff advised defendant's wife that the furniture was at her disposal and could be returned to her home. Defendant's wife, upon receiving such message, informed plaintiff, through his cashier, that her floors had been recently waxed and not to send the furniture. In the meantime, she visited Mr. Davidson, defendant's present attorney, for advice, who advised her that the sale could be rescinded on account of the existing defects. Defendant's wife then visited the establishment of plaintiff.
Plaintiff testified that he perceived only such cracks as might have been caused by persons of extra weight sitting on the davenport and cigarette burns causing the defects. That he informed Mrs. Barry that defendant had purchased the furniture and that it was his. Mrs. Barry contended that the defects were in the furniture and that she did not want the same under any circumstances. However, it is apparent that plaintiff offered Mrs. Barry to await the representative of the manufacturer to inspect the furniture, which he expected within the next few days, but that regardless of the tardiness of the visit that he would send the furniture to the manufacturer for correction of defects to which Mrs. Barry did not expressly consent. However, this is certain, that Mrs. Barry did agree if the furniture would be back by February 15, she would consent, and she thus tacitly agreed that the furniture might be sent back to the factory to be reconditioned.
The set was sent to the factory, and on March 16, plaintiff sent a wire to the factory inquiring as to the status of the same, to which the manufacturer replied that it was being shipped on that day. Upon arrival of the furniture, plaintiff notified defendant and/or his wife that the furniture was there for delivery. Mrs. Barry, for the first time since January 17th, the day of the conversation had with plaintiff relative to the shipment of the furniture to the manufacturer for reconditioning, informed plaintiff that she did not want it and that she had acquired other furniture in its place and stead.
We are satisfied from the evidence that the defendant received the same kind of furniture which he purchased and that there was implicitly included in the sale a warranty on the part of the seller against latent defects in the articles sold. It matters not that these defects did not appear before some sixty days after the purchase in that in the very nature of the thing sold the purchaser could not detect the same without use and until the defects made their appearance. In the case at bar, the defects were reported to the vendor just as soon as they made their appearance. In the kind of furniture bought and the price paid therefor, under the testimony of Mr. Broussard, there should not have been any defects showing within that short a time. The defendant has fully met the burden of proof that such defects existed at the time of the delivery of the furniture, and which said defects entitled him to a rescission of the sale would it not be for the transaction or agreement had between the parties on January 17th, 1939.
As previously stated, there is a sharp conflict as to what was said or understood between plaintiff and Mrs. Barry relative to the sending back of this furniture to the factory for the purpose of correcting the defects existing in the furniture. No doubt both parties were acting in good faith and were attempting to work out a satisfactory adjustment of the difficulty. It is plaintiff's contention that Mrs. Barry agreed to have this furniture sent back to the factory for adjustment of the defects. In this we find corroboration in Mrs. Barry's testimony. We quote: "Something else was said. I don't remember what, and finally he asked me, `Well, Mrs. Barry, don't do anything until I speak to the factory man and I will call you.' I said `All right, when will it be?' This was about the 22nd of January. He said, `It will be about the fifteenth of February.' I said, `Are you sure it will be here on the fifteenth?' He said, `I am sure it won't be more than the fifteenth of February.' I said, `All right, I will wait that long.'" This was sufficient to lull the plaintiff in the belief that it was entirely satisfactory to defendant that this *Page 156 
furniture be sent to the factory, for the repair of the furniture and not a demand for the rescission of this sale. From her action, it can be said that she re-affirmed the sale. The plaintiff went to the expense of sending the furniture to the factory and its return; and by such course of action by Mrs. Barry, defendant is not now in a position to ask for a rescission of the sale. Defendant, at no time after January 17 or February 15 complained to plaintiff of the failure of removing the defects. Defendant knew that the furniture had been or was to be sent back to the factory. It appears to us that defendant was somewhat hasty in buying a second set without notice to plaintiff. It is true that Mrs. Barry may have felt that the delay was somewhat long, yet this delay was not the fault of the plaintiff.
The trial court did not assign any reasons for his judgment, but he necessarily must have come to the conclusion that plaintiff was not at fault in the transaction, and the question involved in this litigation is one more of facts than law, and having resolved these facts in favor of plaintiff, we cannot say that he manifestly erred.
Judgment affirmed.